**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| RICKEY EDWARD MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV548 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Rickey Edward Martin, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Brief); Docket Entry 13 (Defendant's Memorandum); Docket Entry 14 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 154-60), alleging a disability onset date of July 15, 2007 (see Tr. 154), later amended to September 4, 2011 (see Tr. 15). Following denial of that application initially (Tr. 58-64, 77, 78-81) and on reconsideration (Tr. 66-76, 77, 83-85), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 89-90). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 27-57.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 12-21.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 238-39), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings:

1. [Plaintiff] last met the insured status requirements of the . . . [Act] on September 30, 2012.

2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of September 4, 2011 through his last date insured of September 30, 2012.

3. Through the date last insured, [Plaintiff] had the following severe impairments: lumbar degenerative disc disease; upper airway resistance syndrome; and obesity.

. . .

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

2

. . .

5.    . . . [T]hrough the date last insured, [Plaintiff] had
      the residual functional capacity to perform medium work
      as defined in 20 CFR 404.1567(c) with the following
      exceptions: He can frequently climb ramps and stairs.  He
      can frequently climb ladders, ropes, or scaffolds.  He
      can frequently stoop.

. . .

6.    Through the date last insured, [Plaintiff] was capable of
      performing his past relevant work as a tune-up mechanic
      and a tractor-trailer truck driver.  This work did not
      require the performance of work-related activities
      precluded by [Plaintiff]'s residual functional capacity.

. . .

7.    [Plaintiff] was not under a disability, as defined in the
      . . . Act, at any time from September 4, 2011, the
      alleged onset date, through September 30, 2012, the date
      last insured.

(Tr. 17-21 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not established entitlement to relief under the
extremely limited review standard.

3

## A.   Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is

4

disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in

_____

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantially identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the [RFC] to (4) perform [the claimant's] past work or (5) any other work." <u>Albright v. Commissioner of Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations
(continued...)

7

## B. Assignment of Error

Plaintiff's sole assignment of error asserts that "[t]he ALJ committed reversible error by failing to conduct a proper function-by-function analysis of [Plaintiff's] exertional and nonexertional capacities and by failing to explain how the evidence supports the hearing decision's [RFC] assessment." (Docket Entry 11 at 3 (bold font and single-spacing omitted).) In particular, Plaintiff maintains that Social Security Ruling 96-8p, <u>Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims</u>, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p"), "explicitly requires the ALJ to address all seven exertional strength capacities of [Plaintiff]" in the RFC, including "'[s]itting, standing, walking, lifting, carrying, pushing, and pulling,'" with "'[e]ach function . . . considered separately.'" (Docket Entry 11 at 3-4 (quoting SSR 96-8p, 1996 WL 374184, at *5).) Plaintiff further insists that "[t]he ALJ's RFC assessment is inadequate to establish that [Plaintiff] retains the ability to perform medium work because the ALJ failed to address [Plaintiff's] exertional capacity to sit, stand, walk, or bend," and "[t]he RFC . . . does not specify how many hours of an 8-hour workday [Plaintiff] can sit, stand, or walk, or how much bending he can

---

[5](...continued)
of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.,</u> <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

do." (Id. at 7 (citing Tr. 18-20).) According to Plaintiff, "[t]he United States Court of Appeals for the Fourth Circuit has held that it is a reversible error for an ALJ to fail to explain how the evidence supports a finding that [a] claimant can perform the functional requirements of an exertional level of work." (Id. (citing Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018)).) Those contentions fail to warrant relief.

RFC measures the most a claimant can do despite any physical and mental limitations. See Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 404.1569a(c). An ALJ need not discuss every piece of evidence in making an RFC determination, see Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014); however, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion," Woods, 888 F.3d at 694 (internal emphasis, quotation marks, and brackets omitted).

9

As to the role of the function-by-function analysis in the RFC determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio v. Colvin, 780 F.3d 632, 636-37 (4th Cir. 2015). Specifically, the Fourth Circuit stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

1. Sitting, Standing, and Walking Limitations

Plaintiff's contention that the ALJ's decision violated SSR 96-8p and Woods because "[t]he RFC . . . does not specify how many hours of an 8-hour workday [Plaintiff] can sit, stand, or walk"

10

(Docket Entry 11 at 7 (citing Tr. 18-20)) falls short for five reasons.

First, the ALJ found that Plaintiff retained the RFC to perform medium work "as defined in 20 CFR 404.1567(c)" (Tr. 18 (emphasis added)), which regulation defines medium work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," 20 C.F.R. § 404.1567(c). Moreover, that regulation further emphasizes that, "[i]f [Plaintiff] can do medium work, [the ALJ] determine[s] that [Plaintiff] can also do sedentary and light work." Id.; see also Social Security Ruling 83-10, Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2, 1983 WL 31251, at *5 (1983) ("SSR 83-10") (providing that sedentary work entails the ability to sit for a "total [of] approximately 6 hours of an 8-hour workday" and that light work involves the capability to stand and walk "for a total of approximately 6 hours of an 8-hour workday" (emphasis added)).) Thus, the ALJ's citation to Section 404.1567(c) (see Tr. 18) permits the Court to ascertain the sitting, standing, and walking limitations found by the ALJ, see Hacker v. Saul, No. 5:20CV132, 2021 WL 852197, at *3, *5 (N.D.W. Va. Feb. 18, 2021) (unpublished) (finding no error in ALJ's expression of RFC as "sedentary work as defined in 20 C.F.R. § 416.967(a)" where the court could look to the SSA's definition of sedentary work to determine exertional

11

limits of such work), <u>recommendation adopted</u>, 2021 WL 851879 (N.D.W. Va. Mar. 5, 2021) (unpublished).[6]

Second, SSR 83-10 further expounds on the regulatory definition of medium work as follows:

> "Frequent" means occurring from one-third to two-thirds of the time . . . . A full range of medium work requires standing or walking, off and on, for a total of approximately <u>6 hours in an 8-hour workday</u> in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time . . . . The considerable lifting required for the full range of medium work usually requires frequent bending-stooping . . . . However, <u>there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted</u> at times (or involve equivalent exertion in pushing or pulling), <u>but are performed primarily in a sitting position</u>, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs).

---

[6] Plaintiff deems the Commissioner's reference to SSR 83-10 to interpret the ALJ's RFC assessment "invalid," because "the ALJ's RFC assessment on its face cites only 20 C.F.R. § 404.1520(f) [sic]" (Docket Entry 14 at 2 (referencing Docket Entry 13 at 7-8, and citing Tr. 18)), which "defines only the lifting and carrying requirements of medium work" and "does not refer to SSR 83-10" (<u>id.</u> at 3; <u>see also</u> Docket Entry 11 at 7-8). Plaintiff cites no authority precluding courts from looking to long-standing SSA policies regarding the exertional requirements of medium work to construe the limitations indicated by an ALJ's RFC (<u>see</u> Docket Entries 11, 14), and cases hold to the contrary, <u>see, e.g.</u>, <u>Daniels v. Saul</u>, No. 2:20CV230, 2021 WL 667945, at *7 (S.D.W. Va. Jan. 26, 2021) (unpublished) ("SSR 83-10 specifies that a 'full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday,' and '[s]itting may occur intermittently during the remaining time[' and, t]hus, by finding that [the c]laimant could perform light work without any additional standing, walking, or sitting limitations, the ALJ concluded that [the c]laimant could stand and walk for approximately six hours in an eight-hour workday with intermittent sitting." (internal citation omitted)), <u>recommendation adopted</u>, 2021 WL 665534 (S.D.W. Va. Feb. 19, 2021) (unpublished); <u>see also</u> <u>Harrison v. Colvin</u>, No. 1:10CV18, 2013 WL 1661096, at *2 (M.D.N.C. Apr. 17, 2013) (unpublished) (Eagles, J.)(relying on applicable regulations and SSR 83-10 to hold that, "by finding that [the plaintiff] was capable of performing light work, the ALJ implicitly found that she was capable of standing and walking for approximately six hours in an eight-hour work day"). Accordingly, the Court should look to SSR 83-10 in this case to help assess the ALJ's sitting, standing, and walking limitations in the RFC.

SSR 83-10, 1983 WL 31251, at *6 (emphasis added). That Ruling thus explicitly recognizes that, despite the fact that most medium jobs require only intermittent sitting, i.e., up to 2 hours in an 8-hour workday, jobs exist, such as Plaintiff's past relevant work ("PRW") as a tractor-trailer truck driver, that entail the lifting requirements of medium work <u>and</u> require the ability to sit for up to 6 hours in an 8-hour workday.

Third, the ALJ specified how many hours Plaintiff could sit, stand, and walk in his hypothetical question to the VE. (<u>See</u> Tr. 51-52.) The ALJ asked the VE if an individual who could, <u>inter alia</u>, "sit, stand, and walk <u>six</u> hours" remained able to perform Plaintiff's PRW, and the VE responded, "[y]es." (Tr. 52 (emphasis added).) Although the ALJ did not reiterate the specific limitation to six hours of sitting, standing, and walking in the RFC (<u>see</u> Tr. 18), his inclusion of that limitation in the hypothetical nonetheless provides the Court with further evidence of the sitting, standing, and walking limitations found by the ALJ.

Fourth, the ALJ afforded "great weight" to the reconsideration-level state agency medical consultant (Tr. 20), who opined that Plaintiff remained able to <u>sit, stand, and walk</u> for up to <u>6 hours</u> in an 8-hour workday (Tr. 72). The ALJ's crediting of the consultant's opinion therefore supplies additional clarification of the sitting, standing, and walking limitations found by the ALJ.

13

Fifth, Plaintiff's contention that the RFC contradicts his hearing testimony that he has significantly restricted ability to sit while driving a truck due to pain (see Docket Entry 11 at 7 (citing Tr. 44, 47-48)) fails, because the ALJ considered Plaintiff's subjective complaints of disabling back pain, but found Plaintiff's testimony "unpersuasive" in light of his medical records and history. (Tr. 19; see also id. (finding Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record").)[7] The ALJ supported that finding by pointing out that Plaintiff's back pain responded well to epidural injections (see Tr. 19), specifically noting Plaintiff's self-report of a decrease in pain from an eight to a zero on a ten-point pain scale following epidural treatment in December 2011 (see Tr. 20 (citing Tr. 351)). The ALJ additionally cited examination notes showing that Plaintiff had intact motor function, no muscle atrophy, normal gait, full range of motion, and negative straight leg raise tests. (See Tr. 19-20 (citing Tr. 318-28, 356-59).) The ALJ's decision thus permits the Court to ascertain the sitting, standing, and walking restrictions the ALJ found in the RFC, i.e., that Plaintiff remained capable of sitting,

_____

[7] Plaintiff did not challenge the ALJ's evaluation of Plaintiff's subjective symptom reporting. (See Docket Entries 11, 14.)

14

standing, and walking for up to six hours each in an eight-hour workday.

Lastly, Plaintiff maintains that the ALJ made no finding as to the sitting requirements of Plaintiff's PRW as a tractor-trailer truck driver. (<u>See</u> Docket Entry 14 at 7.) According to Plaintiff, "[b]y failing to make th[at] finding[], the ALJ had no basis to make the comparison of [Plaintiff]'s RFC with the demands of his [PRW] as required by 20 C.F.R. § 404.1520(f) and [Social Security Ruling 82-62, <u>Titles II and XVI: a Disability Claimant's Capacity to Do Past Relevant Work, in General</u>, 1982 WL 31386, at *4 (1982) ("SSR 82-62")]." (Docket Entry 14 at 7.) Plaintiff's argument, however, glosses over the distinction between finding that he remained able to perform his PRW (A) as he <u>actually</u> performed it or (B) as <u>generally</u> performed in the national economy. <u>See</u> 20 C.F.R. § 404.1560(b)(2) (providing that, at step four of the SEP, an ALJ can find a claimant not disabled by determining that the claimant can perform PRW either as actually previously performed by the claimant or as generally performed in the national economy). Here, the ALJ explicitly found that Plaintiff retained the RFC to perform his PRW as a tractor-trailer truck driver as <u>generally</u> performed. (Tr. 21; <u>see also</u> Tr. 52 (containing VE's testimony that Plaintiff could perform his PRW as generally performed but that she "[was] not sure as actually performed").) Moreover, the corresponding job description for "Tractor-Trailer-Truck Driver" in the <u>Dictionary of</u>

15

Occupational Titles ("DOT") as cited by the VE (see Tr. 51) categorizes that job as medium work, see DOT, No. 904.383-010, 1991 WL 687703 (G.P.O. 4th ed. rev. 1991), which, as discussed above, requires the ability to sit for up to six hours in an 8-hour workday, see 20 C.F.R. § 404.1567(c) (explaining that, "[i]f [a claimant] can do medium work, [the ALJ] determine[s] that [the claimant] can also do sedentary . . . work"); SSR 83-10, 1983 WL 31251, at *5 (providing that sedentary work entails the ability to sit for a "total [of] approximately 6 hours" (emphasis added)).[8]

2. Bending Limitation

Plaintiff next contends that the "RFC assessment . . . does not specify . . . how much bending he can do." (Docket Entry 11 at 7 (referencing Tr. 18).) That argument misses the mark, as the ALJ specifically found in the RFC that Plaintiff remained able to "stoop" frequently. (Tr. 18.) "Stooping" entails "bending the body downward and forward by bending the spine at the waist," Social Security Ruling 85-15, Titles II and XVI: Capability to Do Other Work - the Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857, at *7 (1985) ("SSR 85-15") (emphasis added). Moreover, Plaintiff's attempt to differentiate between "stooping" and "bending" does not aid his cause. (See Docket Entry 11 at 10-11.) Because Plaintiff

---

[8] Plaintiff neither objected to the VE's categorization of his PRW driving a truck as DOT job number 904.383-010, "Tractor-Trailer-Truck Driver," at the hearing (see Tr. 53-56), nor argued on judicial review that such classification constituted error (see Docket Entries 11, 14).

16

defined "bending" as "leaning over, bending over the engine compartment of a car" (Tr. 54), i.e., a <u>less demanding</u> postural movement than stooping, a finding that Plaintiff could "stoop" frequently necessarily means that he could also "bend" (as defined by Plaintiff) frequently.[9]

Furthermore, the ALJ supported his finding that Plaintiff remained capable of frequent stooping with substantial evidence. The ALJ discussed Plaintiff's medical records showing normal gait, stable standing posture, and normal flexion, extension, and lateral bending. (<u>See</u> Tr. 19-20 (citing Tr. 318-28, 356-59.) The ALJ also credited the reconsideration level state agency medical consultant's opinion that Plaintiff could frequently stoop (<u>see</u> Tr. 20, 72), and noted that no treating, consulting, or non-examining medical source of record opined that Plaintiff "ha[d] debilitating functional limitations or that he [wa]s disabled" (Tr. 20). Although Plaintiff deems the RFC determination "inconsistent with [Plaintiff's] hearing testimony" regarding his "significantly restricted ability . . . to bend over to perform auto mechanic work due to pain" (Docket Entry 11 at 7 (citing Tr. 47-48)), as discussed above, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his]

---

[9] Additionally, the ALJ and reconsideration-level state agency medical consultant (whose opinions the ALJ credited (<u>see</u> Tr. 20)) did <u>not</u> limit Plaintiff's ability to crouch ("bending the body downward and forward by bending both the legs and spine," SSR 85-15, 1985 WL 56857, at *7) <u>at all</u> (<u>see</u> Tr. 18, 72).

Case 1:20-cv-00548-NCT-LPA   Document 15   Filed 09/09/21   Page 17 of 19

symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (Tr. 19; see also Tr. 20 ("In sum, the . . . [RFC] assessment is supported by [the reconsideration-level state agency medical consultant's] physical assessment, by clinical evidence showing that [Plaintiff's] physical capacities remained largely intact, and by evidence showing that his lumbar symptoms were treatable with epidural injections.")).[10]

Lastly, Plaintiff maintains that the ALJ made no finding as to the bending requirements of Plaintiff's PRW as a tune-up mechanic. (See Docket Entry 14 at 7.) According to Plaintiff, "[b]y failing to make th[at] finding[], the ALJ had no basis to make the comparison of [Plaintiff]'s RFC with the demands of his [PRW] as required by 20 C.F.R. § 404.1520(f) and SSR 82-62." (Docket Entry 14 at 7.) That argument ignores the fact that the ALJ expressly found that Plaintiff could perform his PRW as a tune-up mechanic as generally performed. (Tr. 21; see also Tr. 52 (reflecting VE's opinion that Plaintiff remained able to perform his PRW as generally performed but that she "[was] not sure as actually performed").) Moreover, the DOT's job description for "Tune-Up Mechanic" as provided by the VE (see Tr. 51) reflects that "[s]tooping" would occur only "[o]ccasionally," see DOT, No.

---

[10] Plaintiff did not contest the ALJ's findings regarding Plaintiff's subjective symptoms. (See Docket Entries 11, 14.)

18

620.281-066, 1991 WL 685263, i.e., less often than the RFC's restriction to frequent stooping (see Tr. 18).[11]

In light of the foregoing analysis, Plaintiff's sole assignment of error falls short.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgement Reversing the Decision of the Commissioner of Social Security (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 9, 2021

---

[11] Plaintiff neither objected to the VE's classification of his PRW working on automobiles as DOT job number 620.281-066, "Tune-Up Mechanic," at the hearing (see Tr. 53-56), nor argued on judicial review that such categorization amounted to error (see Docket Entries 11, 14). Plaintiff's Reply does complain that the VE "testified that[,] based on h[er] knowledge and the [DOT] description of tune-up mechanic, that occupation requires a worker to bend over the engine of a car 'more than occasionally' (Tr. 54-55). The VE did not specify whether frequent or constant such bending is required (*[i]d*.)." (Docket Entry 14 at 6.) If the VE had believed that the tune-up mechanic job required constant bending (i.e., more than the frequent bending which the ALJ effectively found Plaintiff could do by finding that he could frequently stoop (understood as encompassing bending and reaching toward the floor, see SSR 85-15, 1985 WL 56857, at *7)), the VE would have testified that the job required more than frequent bending (not more than occasional bending). Accordingly, the VE's testimony on point (i.e., that the tune-up mechanic job as generally performed requires more than occasional bending) does not conflict with the ALJ's finding that Plaintiff (who could perform frequent bending, i.e., more than occasional bending) could perform the tune-up mechanic job as generally performed.

19